469 A.2d 221

**In re ESTATE OF Foster C. HILLEGASS, Deceased.**

**Appeal of COMMONWEALTH of Pennsylvania, Attorney General, as Parens Patriae for Charities.**

Superior Court of Pennsylvania.

Argued June 16, 1983.

Filed Nov. 25, 1983.

Charles E. Donohue, Deputy Attorney General, Philadelphia, for appellants.

Adam B. Krafczek, Reading, for participating parties.

Before CERCONE, President Judge, and McEWEN and HOFFMAN, JJ.

HOFFMAN, Judge:

This Commonwealth appeal arises from the lower court's decision to permit the directors of a charitable trust to dissolve the trust in favor of contingent beneficiaries entitled to share the remainder of the donor's estate in the event of such dissolution. Finding no merit in the Commonwealth's several contentions, we affirm the order of the court below.

In 1955, the decedent, Foster C. Hillegass, incorporated The Hillegass Foundation, a non-profit trust, with an initial $1,000 contribution, to provide scholarships for needy students. In May, 1956 he executed a will which was in effect at the time of his death in 1960. In Item Second of his will, the decedent bequeathed his entire estate to his wife, Florence Hillegass, "for and during the term of her natural life, with full power to consume as much of the principal ... as may be necessary for [her] care, maintenance, comfort and support ... and upon her death, provided that the Corporation known as THE HILLEGASS FOUNDATION shall not have been earlier dissolved, I give, devise and bequeath the same unto THE HILLEGASS FOUNDATION...." The will also provided that if the Foundation "should fall by virtue of [its] dissolution," then one-half of the estate would go to the church decedent attended and the remaining half to a group of named relatives. In April, 1961, decedent's

widow renounced her "power to consume" the principal (except so far as needed for a marital deduction). In early January, 1979, Mrs. Hillegass, as head of the Foundation's Board of Directors, petitioned to have the American Bank and Trust Co. of Pennsylvania (American Bank) appointed as the Foundation's trustee. The petition was granted and a subsequent audit of the estate, the first since the Foundation's establishment, was performed. At the time of the audit, Mrs. Hillegass and Charles Hillegass,[1] surviving directors of the Foundation, filed a second petition stating that they were

> of the opinion that The Hillegass Foundation can best more firmly establish itself and continue to exist as an operating charitable foundation with a separate identity as part of the Community Foundation known as Central Montgomery County Foundation ....

> [it is] the desire of your petitioners that there shall never be a dissolution of the Hillegass Foundation within the meaning of Item Second of the Will of Foster C. Hillegass.

Before the filing and granting of the petition, the contingent beneficiaries and the Attorney General, among others, received copies of the petition and a letter from the Foundation, stating, "It is not anticipated that any assets of the estate will ever pass to the church or to any of the individuals named as contingent beneficiaries." In February, 1979, Judge Taxis granted the petition authorizing the transfer of the present assets [2] and the remainder interest of The Hillegass Foundation to the Central Montgomery County Foundation (County Trust). The decree provided, "This transfer constitutes a continuance and not a dissolution of

---

1. The Foundation's by-laws provide that the Foundation have three directors. The decedent was the third director. For a long period after the decedent's death, Mrs. Hillegass and Charles Hillegass, who became too ill to serve, were the only directors.

2. The initial $1,000 contribution had grown to $1,980.32 by March 21, 1979.

The Hillegass Foundation." Subsequent to this order, Mrs. Hillegass, in accordance with authority granted her by the Foundation's by-laws, nominated Wilford Moll, her brother, and Kenneth Hallman, a family friend, to join her on the Board of Directors. Then, on August 12, 1980, Mrs. Hillegass executed a writing on behalf of the Board of Directors stating that the petition she had previously signed was erroneous and that the Foundation should be dissolved in favor of the contingent beneficiaries. In June, 1981, the Commonwealth permitted Mrs. Hillegass to dissolve the corporate life of The Hillegass Foundation. Later in June, the trustee, American Bank, petitioned for a declaratory judgment to determine whether the Board of Directors had the authority to dissolve the Foundation. The Trustee withdrew from the action when appellant, the Attorney General, acting as parens patriae for charitable foundations, took over the representation of the public interest in challenging the dissolution of the Foundation. On March 8, 1982, Judge Tredinnick issued a Decree Nisi stating that "the dissolution of The Hillegass Foundation ... constituted a dissolution thereof for purposes of devolution of assets under the will of Foster C. Hillegass, deceased." The decree also provided that the transfer of the Foundation's remainder interest to the County Trust was revocable.[3] Following the denial of the Commonwealth's exceptions, the decree was finalized. This appeal followed.

The Commonwealth contends first that Judge Taxis' inclusion of The Hillegass Foundation in the County Trust is conclusive of its status, thereby barring this declaratory judgment action on res judicata principles. We disagree, finding the doctrine of res judicata inapplicable in this case. In order for a subsequent action to wholly barred, it

---

**3.** The lower court permitted only the transfer of the remainder interest to be revoked. The Foundation's existing asserts were left with the Central Montgomery County Foundation. We agree that Mrs. Hillegass had the power to dissolve the Foundation in favor of the alternate beneficiaries, but could not withdraw, and hence revoke the transfer of, the existing assets.

must share with the earlier judgment a concurrence of four elements:

    (1) an identity of the thing sued upon;

    (2) an identity of the cause of action;

    (3) an identity of the person and parties to the action; and

    (4) an identity of the quality or capacity of the parties suing or sued.

*Dunham v. Temple University of the Commonwealth System of Higher Education,* 288 Pa.Superior Ct. 522, 527, 532, 432 A.2d 993, 996, 999 (1981); *see Schubach v. Silver,* 461 Pa. 366, 336 A.2d 328 (1975); *Kreider v. Kleinfelter,* 314 Pa.Superior Ct. 571, 461 A.2d 304 (1983); *Del Boring Tire Services, Inc. v. Barr Machines, Inc.,* 285 Pa.Superior Ct. 66, 426 A.2d 1143 (1981).

> The fundamental principle upon which [res judicata] is based is that a court judgment should be conclusive as between the parties and their privies in respect to every fact which could properly have been considered in reaching the determination and in respect to all points of law relating directly to the cause of action and affecting the subject matter before the court.

*Bearoff v. Bearoff Brothers, Inc.,* 458 Pa. 494, 498, 327 A.2d 72, 75 (1974). "The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights." *Township of Ohio v. Builders Enterprises, Inc.,* 2 Pa. Commonwealth Ct. 39, 41, 276 A.2d 556, 557 (1971). "When the causes of action in the first and second actions are distinct, or, even though related, are not so closely related that matters essential to recovery in the second action have been determined in the first action, the doctrine of res judicata does not apply." *Id.,* 2 Pa.Cmwlth. at 42, 276 A.2d at 558. Further, the Court in *Haefele v. Davis,* 399 Pa. 504, 508, 160 A.2d 711, 713 (1960), *citing Wright v. Weber,* 17 Pa.Superior Ct. 451, 457 (1901), cautioned

The conclusive effect of a judicial decision cannot be extended by argument or implication to matters not actually heard and determined nor to collateral questions which arise but do not become part of the case ... [A] former judgment is not conclusive of anything which was not directly decided by it or was not material to the decision. Before such effect can be given to it in another suit, it should appear either from the record, or aliunde, that it must have rested on the *precise* question which it sought again to agitate.

(emphasis added). Here, the first action involved a petition by the Foundation's directors requesting the court to transfer the Foundation's present and future assets to the County Trust without dissolving the Foundation. In response, the lower court authorized the requested transfer, stating that "[t]his transfer constitutes a continuance and not a dissolution of The Hillegass Foundation." The second action, however, involved a petition by the Foundation trustee requesting a declaratory judgment as to the current directors' ability to dissolve the Foundation in favor of the contingent beneficiaries. These two actions, notwithstanding the fact that there was no actual litigation between two identical parties, are substantially dissimilar.[4] The court in the first action merely held that the Foundation would become a contemporaneous part of the County Trust while still remaining a separately identifiable charity. That adjudication did not decide the issue of whether the directors could, at a future date, dissolve the Foundation. We reiterate that "[t]he conclusive effect of a judicial decision cannot be extended by argument or implication to matters not

**4.** Because we find the doctrine of res judicata inapplicable, we need not address the question of whether Mrs. Hillegass' petition to transfer the Foundation's assets and remainder interest to the County Trust was a "judgment." *See* 49 C.J.S. § 1 (a judgment is a "judicial determination that, on matters submitted to a court for decision, or legal duty or liability does or does not exist, or that, with respect to a claim in suit, no cause of action exists or that no defense exists."); 20 P.L.E. § 1 ("A judgment must so dispose of the matters at issue that parties and other persons affected will be able to determine with reasonable certainty the extent to which their rights and obligations have been determined.).

actually heard and determined." *Wright v. Weber, supra* at 457. Deciding that one particular transfer of assets constituted a continuance and not a dissolution of the foundation fails to decide the issue of whether the Foundation can be dissolved in the future. Accordingly, we find the doctrine or res judicata inappropriate in this appeal from the declaratory judgment action.

The Commonwealth's three remaining contentions all concern the ultimate dissolution of the Foundation. The Attorney General argues specifically that the lower court erred in finding that (1) Mrs. Hillegass possessed, in effect, a limited power of appointment under decedent's will; (2) the directors' transfer of the assets was revocable; and (3) the directors had the authority to dissolve the Foundation. Although not choosing to characterize her power as a limited power of appointment,[5] we find that the lower court correctly determined that Mrs. Hillegass, on behalf of the directors, had the authority to revoke the transfer of the remainder interest to the County Trust and to dissolve The Hillegass Foundation. The testator's intention, gleaned from the language of the will, is the controlling factor in construing the instrument. "Consideration must be given to all words used and, if posible, a result reached which is not in disregard of portions of the instrument." *Johnson Estate*, 359 Pa. 645, 649, 59 A.2d 877, 879 (1948) (citations omitted). "[W]ills should be construed so as to give effect to every word employed by the testator." *Keffalas Estate*, 426 Pa. 432, 438, 233 A.2d 248, 251 (1967).

Here, the decedent willed that upon his wife's death, the Foundation would receive the remainder "provided that the

---

**5.** Our interpretation of decedent's intention and the language of his will leads us to conclude that he intended Mrs. Hillegass to be able to dissolve the Foundation in her lifetime. We choose, however, not to characterize her authority as an "indirect limited power of appointment" as did the lower court. This is to avoid confusion with a true power of appointment that would have given Mrs. Hillegass the right to appoint to the remainder interest whomever she desired. *See* Restatement of Property, § 318; *see generally Keffalas Estate, supra.*

Corporation known as THE HILLEGASS FOUNDATION *shall not have been earlier dissolved."* He further provided, however, "in the event that *the bequest should fall by virtue of the dissolution"* of the Foundation, that the church and the named group of relatives would share the remainder. (emphasis added). Thus, the decedent twice mentions the possible dissolution of the trust. Notwithstanding the decedent's interest in his Foundation, the will's language reasonably supports the view that the testator clearly contemplated the dissolution of the trust and chose to dictate that, in that event, his church and a group of his relatives would benefit from the remainder. Other than either the decedent dissolving the trust in his lifetime or Mrs. Hillegass acting to dissolve the trust after her husband's death, we can think of no cause for the trust's dissolution.[6] Mrs. Hillegass was given the power to consume for her lifetime. She also had the authority, under the Foundation's by-laws, to appoint two others to join her as the directors of the Foundation. After the initial $1,000 contribution to the Foundation, neither Mr. nor Mrs. Hillegass contributed additional funds. More importantly, from the time of the Foundation's creation in 1955, including the five years that the decedent was alive, no Foundation monies have ever been distributed. No needy students have ever been given scholarships by The Hillegass Foundation. We question, therefore, the Commonwealth's assertion that the decedent intended that the Foundation exist ad infinitum. We find it apparent that the decedent contemplated that for some reason he or his wife would choose to dissolve the Foundation. It is plausible, for instance, that the decedent may have desired the Foundation's dissolution if the need for student scholarships declined, or his church encountered financial hardship. Because we feel that the

**6.** We find no merit in the Commonwealth's assertion that the language, "unless earlier dissolved," indicates that the remainder was to vest at the time of decedent's death. This conclusion is contrary to the language of the will, Mrs. Hillegass's power to consume and our determination of her authority to dissolve the Foundation.

decedent intended his wife would be able to consider similar options, we infer from the language of his will that Mrs. Hillegass had the right to dissolve the Foundation.

Although no language in the will details a procedure for dissolving the Foundation, any dissolution must comply with the procedures outlined in the Corporations Not-For-Profit Act, 15 Pa.C.S.A. § 7101 *et seq.*[7] Accordingly, because the record reveals that the Commonwealth permitted the dissolution of the incorporated Foundation, Lower Court Op. at 3, we find that the Foundation has been validly dissolved, both in terms of the decedent's intent as evidenced by his will, and the statutory requirements for corporate dissolution.[8]

In conclusion, we hold that the Commonwealth's position has little merit and affirm the lower court's decree.

Affirmed.

7. The Commonwealth's two references to the Corporation Not-For-Profit Act, 15 Pa.C.S.A. § 7101 *et seq.*, are irrelevant. 15 Pa.C.S.A. § 7728 relates to transactions between interested directors and non-profit corporations. Here, there has been no contract or transaction between Mrs. Hillegass and the Foundation that has accrued to Mrs. Hillegass's benefit. She has merely exercised her right to dissolve the Foundation. Further, the Commonwealth relies on § 7549 to demonstrate the directors' bad faith in dissolving the Foundation. We need not reach the issue of the directors' alleged bad faith in light of our finding (1) Mrs. Hillegass within her rights and (2) the non-profit corporation dissolved according to the laws of the Commonwealth.

8. Because we infer Mrs. Hillegass's right to dissolve the foundation from decedent's will, we find, inherently, that she could revoke the transfer of the remainder interest to the County Trust as well. The Commonwealth argues that the dissolution must fail because the directors, in revoking the transfer and dissolving the Foundation, terminated a charitable trust. We disagree. The lower court's decree correctly left the Foundation's present assets, approximately $2,000, in the County Trust for distribution according to the decedent's intent. Therefore, the only "true" assets of the Foundation were left in a charitable trust. Consistent with our interpretation of the will, the Foundation was only entitled to the remainder interest if the Foundation existed at the time of Mrs. Hillegass's death. Therefore, because the remainder interest was only potentially part of the Foundation, the Commonwealth's protection of the charitable foundation need extend only so far as its current assets. The Foundation enjoys only the right accorded it by the testator and no more.