631 A.2d 631

**MORGAN GUARANTY TRUST COMPANY OF NEW YORK, Appellee,**

v.

**Theodore F. STAATS and Adele DeBartolo Staats, Appellants.**

Superior Court of Pennsylvania.

Argued Feb. 9, 1993.

Filed Sept. 16, 1993.

480

Richard A. Ferris, Pittsburgh, for appellants.

Kenneth A. Eisner, Pittsburgh, for appellee.

Before KELLY, JOHNSON and HESTER, JJ.

KELLY, Judge:

In this appeal we are asked to determine whether the trial court properly denied appellants a Rule upon a judgment creditor to show cause why execution of a transferred judgment should not be stayed or to set aside the execution where appellants, the Staats, averred that the judgment to be executed against them had been satisfied in whole or in part. We hold that appellants have failed to merit a stay of execution or a set-aside of the execution on the transferred judgment and affirm.

The relevant facts and procedural history underlying this appeal are as follows. On November 25, 1985, appellants, Theodore F. Staats and Adele DeBartolo Staats, executed a negotiable promissory note (Staats Note) to Bell Tower Associates, Ltd. (Bell), a Texas limited partnership, in the amount of one hundred ninety-two thousand dollars ($192,000.00). Bell was in the process of acquiring the Bell Tower Apartment Home complex in Irving, Texas. The apartment complex contained three hundred thirty-four (334) residential units; a total of thirty (30) units were to be sold. The Staats Note executed to Bell secured one (1) unit as an investment. Appellants agreed to pay their note in six equal installments of thirty-two thousand dollars ($32,000.00), plus interest on the unpaid balance, payments to commence May 15, 1986. As part of their investor arrangement as a limited partner, the appellants also executed an "Estoppel Letter and Assumption

Agreement" through which they personally assumed the liability on their Note, unconditionally, limited only by the amount of their Note plus reasonable costs incurred in enforcing their obligation.[1]

On June 10, 1986, Bell entered a financial relationship with Morgan Guaranty Trust Company of New York (Morgan). Bell executed a secured term note (Secured Term Note) with Morgan in the amount of three million seven hundred thousand dollars ($3,700,000.00). As inducement for the loan, and as collateral securing payment on its Secured Term Note, Bell irrevocably and unconditionally assigned and delivered the Staats Note to Morgan. As well, Bell delivered to Morgan appellants' estoppel letter and assumption agreement.

Appellants duly remitted the 1986 and 1987 payments on the Staats Note but allegedly failed to make their May 15, 1988, 1989, 1990, 1991 principal and interest payments. Pursuant to paragraph (1-a) of the negotiable promissory note executed by appellants to Bell, the Staats Note, this failure to make payments when due constituted an "event of default." Under the terms of the Staats Note, the default for nonpayment triggered the acceleration of the entire unpaid principal sum, together with accrued interest, to be calculated at three percent per annum over the "prime rate" from the date payment was due until payment was received in full, plus reasonable attorney's fees and costs associated with the collection process. Morgan demanded payment from appellants but the default continued uncured.

In September, 1991, Morgan sued appellants for the amount of one hundred twenty-eight thousand dollars ($128,000.00), the remaining principal sum due on the Staats Note, together with accrued interest, plus costs and fees associated with collection. This action commenced in the federal district court for the Southern District of New York, as agreed to by appellants in the Staats Note, paragraph (8).[2] Appellants

1. In effect, the appellants became directly liable on their Note to Morgan Guaranty, the lender to whom the Note was eventually assigned.

2. *See* Negotiable Promissory Note (Staats Note) at 3, paragraph (8):

entered an appearance through counsel but chose not to submit any opposition to Morgan's motion for summary judgment, for the stated reason that appellants lacked the resources to continue an active defense of the case. Accordingly, the court granted the summary judgment on default. Morgan's judgment against appellants includes:

| | |
|---|---|
| $128,000.00 | principal sum due |
| 55,855.93 | interest accrued from 5/16/88 to 3/9/92 |
| 604.50 | attorney's fees |
| + 140.00 | costs associated with action. |
| $184,600.43 | total[3] |

Following entry of the transferred judgment and the writs of execution directing the sale of their business and residential properties in Allegheny County, Pennsylvania, appellants petitioned the Court of Common Pleas for a Rule on Morgan to show cause why the execution proceedings should not be

For purpose of any action, suit or other proceeding in respect of this Note, Maker hereby submits and consents to the jurisdiction of the courts of the State of New York and of the United States District Court for the Southern District of New York, and Maker agrees that any such action, suit or proceeding may be brought by Payee or the then holder of this Note in the Supreme Court of the State of New York, New York County, or in the United States District Court for the Southern District of New York, and that service of process may be made upon Maker by mailing a copy of the summons and any complaint to Maker by registered mail, at the address specified below by Maker's signature (or such other address as Maker may specify from time to time in writing to Payee or the then holder of this Note). In any such action, suit or proceeding, Maker hereby waives (and Payee or the then holder of this Note shall be deemed to have waived) trial by jury and Maker hereby waives and agrees not to assert, by way of motion or otherwise, in any such action, suit or proceeding, any claim that he is not personally subject to the jurisdiction of the above-named courts, that the action is brought in an inconvenient forum or that the venue of the action is improper....

3. The district court for the Southern District of New York calculated and entered judgment on behalf of Morgan against appellants in the sum of $184,600.43. The petition to register this foreign judgment listed $184,600.43 as the judgment amount. The foreign judgment on that amount was filed with the prothonotary's office of Allegheny County on April 6, 1992. Despite the inclusion of an amended petition for default judgment which calls for a recalculation of the amount owed by appellants as ($195,638.21), the judgment entered against appellants in Pennsylvania was in the above amount ($184,600.43).

stayed or to set aside the execution. The trial court denied appellants' motion. This timely appeal followed.[4]

The Uniform Enforcement of Foreign Judgments Act provides, in relevant part, that the clerk of the Court of Common Pleas shall treat any foreign judgment in the same manner as a judgment arising from any court of Common Pleas of this Commonwealth. 42 Pa.C.S.A. § 4306(b). This statute defines "foreign judgment" as "any judgment, decree or order of a court of the United States or of any other court requiring the payment of money which is entitled to full faith and credit...." 42 Pa.C.S.A. § 4306(f).

■ Where a foreign court has jurisdiction over the subject matter and the parties in a dispute, a judgment of that court is entitled to the same full faith and credit, validity, and effect in Pennsylvania, *Dooley v. Rubin*, 422 Pa.Super. 57, 618 A.2d 1014 (1993); *United Carolina Bank v. Martocci*, 416 Pa.Super. 16, 610 A.2d 484 (1992), unless that judgment has been obtained in derogation of the debtor's due process rights to appear and defend. *Noetzel v. Glasgow, Inc.*, 338 Pa.Super. 458, 487 A.2d 1372 (1985), *certiorari denied*, 475 U.S. 1109, 106 S.Ct. 1517, 89 L.Ed.2d 915 (1986).

■ Instantly, the federal district court for the Southern District of New York entered a judgment in default against appellants, who appeared through counsel but specifically chose not to oppose Morgan's motion for summary judgment. The New York judgment was valid, unopposed, and enforceable under the laws of New York. Thus, the judgment was transferrable to Allegheny County, Pennsylvania where the Common Pleas Court was bound to give full faith and credit to the award.

Appellants assert, however, that the Pennsylvania trial court abused its discretion in denying the appellants' petition for a rule to show cause why execution of the transferred

4. On May 22, 1992, the trial court granted appellants' application for supercedeas to stay execution pending appeal, conditional upon appellants' posting a bond in the amount of ten thousand dollars ($10,000.00), which they posted on the same day.

judgment should not be stayed or set aside where that court refused to inquire into the foreign judgment notwithstanding appellants' allegations that the judgment had been satisfied in whole or in part.  We disagree.

In general, a court will not disrupt the rights of creditors to collect valued judgments by any legal means. *Augustine v. Augustine,* 291 Pa. 15, 139 A. 585 (1927).  Pennsylvania law has long recognized the inherent power of a court to stay an execution proceeding where necessary to protect the rights of the parties.  *Kronz v. Kronz,* 393 Pa.Super. 227, 233, 574 A.2d 91, 94 (1990); Pa.R.Civ.P. 3121.  A court does not exercise this power capriciously; unless the facts warrant an exercise of that judicial discretion, a court should not stay an execution.  *Id.*  In order to merit a stay of execution, the law and equities in the case of the party seeking relief must be plain and free from doubt or difficulty.  *Pennsylvania Co. for Ins., etc. v. Scott,* 329 Pa. 534, 198 A. 115 (1938) (quoting *Patterson v. Patterson,* 27 Pa. 40 (1856)).

After a careful review of the circumstances surrounding the execution of appellants' joint obligation, as embodied in the Staats Note, estoppel letter and assumption agreement, we are convinced that appellants have not averred sufficient facts to shift the equities of this case in their favor.  For the following reasons, we agree that the Allegheny County Court of Common Pleas properly denied appellants relief.

A close review of the documents signed by appellants reveals that they expressly agreed to the assignment of the Staats Note by the payee, Bell Tower Associates, Ltd.  *See* Negotiable Promissory Note (Staats Note) at 3, paragraph (6). Additionally, paragraph (12) of the estoppel letter and assumption agreement expressly obligated appellants

... without any right of setoff, deduction, or defense which the Limited Partner may have against the Partnership or the Bank, and without abatement, suspension, deferment, diminution or reduction and the obligation of the Limited Partner hereunder shall in no way be released, discharged, or otherwise affected by reason of (a) any change, waiver,

extension, indulgence, or other action or omission by the Bank in respect of any obligation or liability of the Limited Partner of the Partnership, (b) any bankruptcy insolvency, reorganization, composition, adjustment, dissolution, or [sic] any other limited partner of the Partnership or any any [sic] action taken with respect to this Agreement by any trustee or receiver of the Partnership, (c) any claim which the Limited Partner has or might have against the Partnership, or (d) any failure on the part of the General Partner to perform in accordance with the terms of the Limited Partnership Agreement of the Partnership whether or not the Limited Partner shall have notice or knowledge of any of the foregoing.

In the document entitled "Statements of Limited Partner," Schedule A attached to the estoppel letter and assumption agreement, which was fully incorporated by reference therein, paragraph (13), appellants affirmed that they had ample opportunity to review the documents with personal counsel and were satisfied that they had a complete understanding of the agreement. As a final endorsement in Schedule A, appellants affirmed that the estoppel letter and assumption agreement constituted "valid, legal and binding obligations, enforceable according to their terms." Absent proof of satisfaction of the debt, appellants remained obligated to Morgan throughout the summary judgment proceeding in New York, which they did not oppose despite a full and fair opportunity to do so. Appellants are, therefore, bound by the transferred judgment and cannot be permitted to stall collection thereon.

Moreover, appellants' averments of sums obtained by Morgan as a result of payments made by other limited partners or in the purported foreclosure sale of their investment unit fall, as well, beneath the weight of their express waivers. Appellants proffered a list of possible recent contributions to Morgan from other limited partners to satisfy the Partnership debt. Other payments received by Morgan from other limited partners do not reduce appellants' liability on the Staats Note, as that liability is independent of the Partnership liability or that of other limited partners, according to paragraphs (2) and

(7) of the estoppel letter and assumption agreement. In support of their contention that Morgan received monies resulting from Bell's foreclosure sale of their investment unit, appellants offer a letter of notice of sale. Appellants do not demonstrate that Morgan actually received the proceeds of the foreclosure sale. However, their defense of unjust enrichment could have been raised in the original action which appellants chose not to oppose. In any event, the recoupment rights arguably available to appellants are against Bell, not Morgan, as appellants remain primarily liable to Morgan on the Staats Note.

■  Every holder of a negotiable instrument is deemed, *prima facie*, a "holder in due course." *Bogdanoff, to Use of Grossman v. Manis*, 346 Pa. 243, 30 A.2d 321 (1943). A holder in due course is a holder who takes an instrument for value, in good faith and without notice of defect, default, dishonor, or any claim to it on the part of any person. 13 Pa.C.S.A. § 3302. To the extent a holder of an instrument is a holder in due course, the holder takes the instrument free of all defenses of persons with whom the holder has not dealt, with the exceptions of the defenses of infancy, legality, misrepresentation, discharge in insolvency proceedings, or any other discharge of which the holder has notice when taking the instrument. 13 Pa.C.S.A. § 3305.

■  Even if appellants had not signed the documents expressly waiving all defenses, they are still bound on their obligation to Morgan by virtue of Morgan's status as a holder in due course. Morgan, as assignee of the Staats Note and accompanying documents, is a "remote transferee" in commercial parlance. Morgan took possession of the documents for value, the loan proceeds advanced to Bell, in the normal course of Morgan's business. At the time of assignment, June 10, 1986, appellants were not in default. Appellants signed the estoppel letter and assumption agreement, in blank, well before Bell obtained its loan from Morgan. Morgan did not deal directly with appellants but with Bell. Thus, Morgan's status as a holder in due course of the Staats Note entitles

Morgan to payment on that note pursuant to the transferred judgment, even in the absence of an express waiver of defenses.

Appellants argue, however, that the Bell–Morgan debt was discharged in Bell's bankruptcy proceedings. On the contrary, the record discloses that Bell and Morgan reinstated their financial agreement, subject to some modifications, on August 22, 1988.[5] The reinstatement and modifications went directly to the terms of the agreement between Bell and Morgan. By virtue of the Staats Note, paragraph (4) and the estoppel letter and assumption agreement, paragraph (7), appellants' liability continued despite any subsequent renewals, extensions or modifications that might otherwise have affected their liability.

Judgment liens are a product of centuries of statutes which authorize a judgment creditor to seize and sell the land of debtors at a judicial sale to satisfy their debts out of the proceeds of the sale. The judgment represents a binding judicial determination of the rights and duties between the parties, and establishes their debtor-creditor relationship for all the world to notice when the judgment is recorded in a Prothonotary's Office. When entered of record, the judgment also operates as a lien upon all real property of the debtor in that county. 42 Pa.C.S. Sections 4303(a)(b), 1722(b) and 2737(3).

The judgment lien represents security for the underlying debt, *Commonwealth v. Meyer*, 169 Superior Ct. [Pa.Super.] 40, 82 A.2d 298 (1951), and conveys a right of execution to the judgment creditor in satisfaction of his debt. The judgment not only affects all real property owned by the debtor, but extends to his equitable interests, *Auwerter v. Mathiot*, 9 Serg. and R. 397 (1823) and beneficial interests as well *Davis v. Commonwealth Trust Company*, 335 Pa. 387, 7 A.2d 3 (1939).

*In re Upset Sale, Tax Claim Bureau of Berks County*, 505 Pa. 327, 334, 479 A.2d 940, 943 (1984). Judgment creditors have a

---

5. *See* Secured Term Note Reinstatement and Modification Agreement.

protectable property interest as the judgment is a valuable form of property. *Id.* at 335, 479 A.2d at 944. The exercise of judicial discretion to stay execution on a creditor's judgment involves a balancing of the rights of the debtor and creditor.[6] *Kronz v. Kronz, supra* 393 Pa.Super. at 233, 574 A.2d at 94. "The true principle is that equity has no jurisdiction unless the controlling facts are proved by matters of record, or by undisputed writings, or are admitted." *Brackin v. P.E. Welton Engineering Co.*, 283 Pa. 91, 98, 128 A. 818, 820 (1925).

At bar, appellants contend that two additional installment payments were made on the Staats Note. Thus, conclude appellants, they should be credited with these payments as the alleged payments significantly reduce their debt owed to Morgan. Unfortunately, these alleged payments are not proved by matters of record, or otherwise verified sufficiently, to call into question the amount due. Had appellants demon-

---

**6.** *See generally In re Upset Sale, Tax Claim Bureau of Berks County, supra* (judgment creditors can lose valuable property rights where realty securing their judgment is sold in tax proceedings without specific notice to creditor); *Foster v. Rubenstein,* 383 Pa. 236, 118 A.2d 195 (1955) (court may stay execution pending resolution of equity proceedings between the same parties, involving the same subject matter in another court); *Commissioners of Sinking Fund of City of Philadelphia v. City of Philadelphia,* 324 Pa. 129, 188 A. 314 (1936) (stay of execution proper upon a showing of oppression and unnecessary hardship to the judgment debtor); *Lewis v. Linton,* 207 Pa. 320, 56 A. 874 (1904) (application for stay of execution writ should have been granted where petitioner averred material facts that since the rendition of the judgment, it had been fully paid); *Turnway Corp. v. Soffer,* 265 Pa.Super. 357, 401 A.2d 1345 (1979) (conflict between court order and order of the Department of Environmental Resources sufficient to stay execution against supersedeas bond until purported conflict resolved). *Compare Pennsylvania Co. for Ins., etc. v. Scott, supra* (Act arbitrarily reclassifying judgment creditor as subject to statutory stay in order to preclude availability of certain debt collection method deprives creditor of resort to valid remedy and is unconstitutional as violative of Article III, section 7 of the Pennsylvania Constitution and the Fourteenth Amendment of the Federal Constitution); *Hughes v. Shreiner,* 202 Pa. 488, 52 A. 30 (1902) (absent averment of want of jurisdiction or legal satisfaction of debt, affidavit of defense insufficient to stay foreign judgment execution); *Wilner v. Croyle,* 214 Pa.Super. 91, 252 A.2d 387 (1969) (where husband and wife both liable on entire obligation to creditor and neither was willing nor able to pay the obligation unilaterally and proceed against the other for contribution, insofar as possible, property of each ordered sold to pay one-half of the judgment).

strated payments, subsequent to the rendition of the judgment, sufficient to satisfy the judgment, under *Hughes v. Shreiner* (n. 5), the judgment could be stricken. Bald statements of prior payments, absent more, cannot be used to attack the judgment in an ancillary proceeding.

As a final inquiry, we explore whether the doctrine of *res judicata* operates to bar appellants' claims in support of their petition for a Rule upon Morgan to show cause why execution should not be stayed or to set aside the execution. A subsequent action is wholly barred if it shares with the earlier judgment a concurrence of four elements:

(1) an identity of the thing sued upon;

(2) an identity of the cause of action;

(3) an identity of the person and parties to the action; and

(4) an identity of the quality or capacity of the parties suing or sued.

*In re Estate of Hillegass,* 322 Pa.Super. 139, 144, 469 A.2d 221, 223 (1983) (citations omitted).

The fundamental principle upon which [res judicata] is based is that a court judgment should be conclusive as between the parties and their privies in respect to every fact which could properly have been considered in reaching the determination and in respect to all points of law relating directly to the cause of action and affecting the subject matter before the court.

*Bearoff v. Bearoff Brothers, Inc.,* 458 Pa. 494, 498, 327 A.2d 72, 75 (1974). "The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights." *Township of Ohio v. Builders Enterprises, Inc.,* 2 Pa.Commonwealth Ct. 39, 41, 276 A.2d 556, 557 (1971). "When the cause of action in the first and second actions are distinct, or, even though related, are not so closely related that matters essential to recovery in the second action have been determined in the first action, the doctrine of res judicata does not apply." *Id.* at 42, 276 A.2d at 558. Further, the

Court in *Haefele v. Davis*, 399 Pa. 504, 508, 160 A.2d 711, 713 (1960), *citing Wright v. Weber*, 17 Pa.Superior Ct. 451, 457 (1901), cautioned

The conclusive effect of a judicial decision cannot be extended by argument or implication to matters not actually heard and determined nor to collateral questions which arise but do not become part of the case ... [A] former judgment is not conclusive of anything which was not directly decided by it or was not material to the decision. Before such effect can be given to it in another suit, it should appear either from the record, or aliunde, that it must have rested on the precise question which it [is] sought again to agitate.

*Id.* 322 Pa.Super. at 144–45, 469 A.2d at 223–24. When a judgment by default becomes final, all the general rules in regard to conclusiveness of judgments apply. *See Zimmer v. Zimmer*, 457 Pa. 488, 326 A.2d 318 (1974) (a default judgment as a result of failure to answer is as conclusive as a judgment entered on a jury verdict). A default judgment is *res judicata* with regard to transactions occurring prior to entry of judgment. *Quaker City Chocolate & Confectionery Co. v. Warnock Bldg. Ass'n.*, 347 Pa. 186, 32 A.2d 5 (1943).

Instantly, appellants entered an appearance through counsel in the New York summary judgment proceeding but chose not to oppose the motion for default judgment, for the stated purpose that they lacked the financial resources to continue litigation. Both appellants are knowledgeable investors who were represented by competent counsel throughout the investment process and at the original proceedings instituted by Morgan in New York to recover on the Staats Note.

Permitting the requested Rule upon Morgan, we conclude, is tantamount to allowing appellants to move the action to Pennsylvania, thereby circumventing (1) their express waivers, (2) their agreement to litigate in New York applying New York law to any disputes on their investment, and (3) the *res judicata* effect of the summary judgment proceedings in New York.

This court articulated the policy underlying the doctrine of *res judicata* in *Consolidation Coal Co. v. Dist. 5, United Mine Workers:*

> The *res judicata* doctrine is a judicial creation aimed at preventing a multiplicity of suits. It protects a party from the vexation of having to defend itself against a claim for which a final judgment has already been entered. Furthermore, it serves the public interest by keeping the courts clear of disputes that have been decisively resolved.
>
> .    .    .    .    .

336 Pa.Super. 354, at 362, 485 A.2d 1118, at 1122 (emphasis added; citations omitted); *see also LeBeau v. LeBeau,* 258 Pa.Super. 519, at 523–25, 393 A.2d 480, at 482.

*Coleman v. Coleman,* 361 Pa.Super. 446, 454, 522 A.2d 1115, 1119 (1987) (*en banc* ). Accordingly, the doctrine of *res judicata* precludes a collateral attack by appellants on Morgan's judgment.

For the foregoing reasons, we hold that the Allegheny County Court of Common Pleas properly exercised its discretion when denying appellants' petition for a Rule on their judgment creditor, Morgan, to show cause why execution should not be stayed or set aside, and affirm the court's order refusing appellants relief.

Order affirmed.