**Herbert A. GERSENSON, on behalf of himself and all others similarly situated, Appellee**

**v.**

**PENNSYLVANIA LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION, an unincorporated association, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 4, 1999.

Filed April 8, 1999.

Reargument Denied June 16, 1999.

Jane L. Dalton, Philadelphia, for appellant.

J. Dennis Faucher, Philadelphia, for appellee.

Before JOHNSON, SCHILLER, and BROSKY, JJ.

JOHNSON, J.:

¶ 1 Pennsylvania Life and Health Insurance Guaranty Association (PLHIGA) appeals the trial court's orders denying PLHIGA's motion for summary judgment, certifying the class plaintiffs and, subsequently, granting the plaintiff's motion for summary judgment. PLHIGA asserts that the court erred in its rulings by refusing to grant full faith and credit to an order of the California Superior Court, which purported to extinguish the Plaintiff's right of recovery under Pennsylvania's Life and Health Insurance Guaranty Association Act, 40 P.S. § 1801–1824 (repealed 1992; current version at 40 P.S. § 991.1701–1718) (sometimes hereafter "the Act"). We find that the California court did not extend due process in the form of adequate notice and we conclude that, consequently, the trial court did not err in refusing to grant full faith and credit. Accordingly, we affirm the trial court's respective orders denying PLHIGA's motion for summary judgment, granting the Plaintiff's motion for summary judgment, and certifying the class plaintiffs.

¶ 2 This action arises out of the insolvency of Executive Life Insurance Company (ELIC), a California insurer licensed to conduct business in Pennsylvania and numerous other states. ELIC was one of the largest life insurance companies operating in the United States and its failure was "the most far-reaching and financially serious insolvency in the [insurance] industry's history." Memorandum of Law in Support of [ELIC's] Motion for Summary Judgment, at 20. During the 1980s, the plaintiff, Herbert A. Gersenson, and over 20,000 other Pennsylvania residents entered guaranteed annuities and other forms of insurance contracts with ELIC. To establish the requisite reserves underlying its contracts, ELIC relied on the value of non-investment grade securities commonly known as "junk bonds." ELIC's holdings failed to perform as projected and, in 1991, the California Department of Insurance commenced a conservation action against ELIC seeking appointment of the California insurance commissioner as conservator and rehabilitator. *See Garamendi, Insurance Commissioner v. Executive Life Insurance Company*, 17 Cal.App.4th 504, 21 Cal.Rptr.2d 578 (1993). On December 6, 1991, the Superior Court of the State of California for the County of Los Angeles (the conservation court) found ELIC insolvent and ordered the company liquidated to satisfy the claims of creditors and policyholders. The conservation court appointed the insurance commissioner of California as conservator and rehabilitator. To avoid a "fire-sale" liquidation, the commissioner coordinated a rehabilitation plan pursuant to which ELIC's assets would be combined with contributions from participating state insurance guaranty associations to provide a resource from which ELIC's policy obligations would be paid. Each guaranty association's participation was "predicated on a release from [the ELIC] policyholders stating that the [association's participation in the plan] fully satisfied each state guaranty association's statutory obligations and releasing each guaranty association from any potential claims." Memorandum of Law, *supra* at 23. PLHIGA agreed to participate in the plan.

¶ 3 Under the terms of the plan, ELIC's assets were transferred to Aurora National Life Assurance Company (Aurora), an insurer newly formed under California law to assume the ELIC policies. ELIC policyholders residing in the states where guaranty associations participated in the plan were provided the option either to opt in to benefits under the plan or to opt out. Those who failed to opt out were deemed participants in the plan subject to the same terms as those who affirmatively opted in. Herbert Gersenson failed to opt out and was deemed a participant in the rehabilitation plan as if he had opted in. All participants received new policies issued by Aurora with restructured terms less favorable than those guaranteed by ELIC. The plan required participants to submit to the jurisdiction of the conservation court and to release their legal rights under their respective state guaranty statutes. The plan required those who opted out to accept the liquidation values of their policies, at levels dramatically below those forecast for payment under the new policies issued by Aurora.

¶ 4 Though the conservation court ordered that its approval and implementation of the plan "does not affect the rights of any contract holder who opts out vis-à-vis his or her respective state insurance guaranty association," PLHIGA apprised Pennsylvania policyholders that it considered its statutory obligations discharged by its participation in the rehabilitation plan. Of approximately 17,500 policyholders certified in this action, over 16,000 opted to participate or were waived into the rehabilitation plan when they failed to opt out. The conservation court approved the plan based on the participating policyholders' putative release of their statutory claims and issued an Implementation Order. Implementation Order, Reproduced

Record (R.R.) at 0615a. Thereafter, PLHIGA contributed over $150,000,000 to fund the plan.

¶ 5 Subsequently, Gersenson commenced this action, asserting that the terms of the rehabilitation plan violated the provisions of the Life and Health Insurance Guaranty Association Act, 40 P.S. § 1801–1824 (repealed 1992). *See* 40 P.S. § 991.1718, effective December 18, 1992 (directing that successor provision "shall not apply to any insurer which was declared insolvent before the effective date of this article"). Gersenson claimed that the value ultimately payable under the restructured policy, including PLHIGA's contribution, was less than the value for which ELIC was liable under the former policy, and so violated 40 P.S. § 1807(j). PLHIGA denied all material allegations and, subsequently, moved for entry of summary judgment. PLHIGA argued that Gersenson's claim of statutory benefits was barred by his participation in the rehabilitation plan because participation included a release of all claims. PLHIGA reasoned that because the release of claims was confirmed by the Implementation Order of the conservation court, the Pennsylvania trial court was bound to enforce the release by the doctrine of full faith and credit. The trial court, the Honorable Bernard J. Avellino, rejected PLHIGA's argument, however, concluding that "California does not have jurisdiction to adjudicate claims between a Pennsylvania agency and Pennsylvania residents that arise under a Pennsylvania statute designed to benefit [the residents]." Order, 2/10/95, at 1.

¶ 6 Thereafter, Plaintiff moved for class certification seeking inclusion in the class of all former ELIC policyholders resident in Pennsylvania, including those who had opted out of the California rehabilitation. PLHIGA stipulated to all certification prerequisites, except as they applied to the policyholders who had opted out. PLHIGA opposed their inclusion in the certified class on the assertion that their claims did not share common issues of law and fact with those of policyholders who

had participated in the rehabilitation. Subsequently, following a class certification hearing, Judge Avellino certified former ELIC policyholders as members of the class on the basis of the type of policy they had purchased, and without recognition of their status under the California rehabilitation. The court described the class as:

> All Pennsylvania residents on December 6, 1991, who were owed contractual obligations under any of the following types of individual insurance or annuity products issued by Executive Life: annual premium whole life contracts; single premium whole life contracts; single premium deferred annuities, including custom qualified retirement annuities and allocated qualified retirement annuities which were not in payment status; and flexible premium retirement annuities.

Order, 4/12/95, at 1.

¶ 7 Subsequently, both parties submitted actuarial reports on the extent of the loss suffered by the class plaintiffs under the terms of the restructured insurance policies, including PLHIGA's contribution under the rehabilitation plan. Both actuaries agreed that the obligations guaranteed by PLHIGA through the plan were lower in value than ELIC's obligation under the original policies. Consequently, Plaintiff moved for summary judgment asserting that the experts' reports eliminated any question of material fact concerning PLHIGA's violation of 40 P.S. § 1807. Section 1807 requires that PLHIGA "guarantee, assume or reinsure" the contractual obligations of insolvent insurers writing policies in Pennsylvania, and that the obligations so assumed "shall be *as great as* but no greater than the contractual obligations of the insolvent insurer would have been in the absence of an insolvency unless such obligations are reduced as permitted by subsection (d)." 40 P.S. § 1807(c)(1), (j) (emphasis added).

¶ 8 Plaintiff's motion proceeded in the trial court before the Honorable Stephen

E. Levin. Upon review, Judge Levin concluded that PLHIGA's contribution under the California rehabilitation plan was not "as great as" ELIC's obligation under its former policies, and so did not satisfy its obligation to individual ELIC policyholders under the Pennsylvania statute. In deference to Judge Avellino's finding that the conservation court lacked jurisdiction to adjudicate Plaintiff's claims, Judge Levin declined to grant full faith and credit to the Implementation Order and entered judgment for the Plaintiff. Subsequently, the court granted an offset of $100 per policy to reflect a "deductible" prescribed by Section 1807(j) and modified its prior order to grant judgment in favor of the class plaintiffs for $16,647,974 with interest from January 3, 1998, at the rate of $2,395 per day. Order of Court, 6/12/98, at 2. PLHIGA filed this appeal.

¶ 9 PLHIGA raises five issues for our review, stated in pertinent part as follows:

1. Whether Pennsylvania courts are required to give full faith and credit to an order of the California Superior Court issued in the [ELIC] insolvency proceeding to the extent that that order affects the rights of Pennsylvania resident [ELIC] policyholders against the Association[;]

2. [Whether] ... the California court's assertion of jurisdiction over [ELIC] policyholders who failed to opt out of the rehabilitation plan violate[s] [their] due process rights[;]

3. Whether Pennsylvania resident [ELIC] policyholders released [PLHIGA] from additional statutory benefits by electing to participate in the [ELIC] Rehabilitation Plan[;]
    ....

4. Whether [PLHIGA] fully satisfied its statutory obligation to Pennsylvania resident [ELIC] policy holders under the Pennsylvania Life and Health Insurance Guaranty Association Act (40 P.S. § 1801, et seq.) by its participation in the [ELIC] Rehabilitation Plan[;] ....

5. Whether the class was inappropriately certified as including both Pennsylvania resident [ELIC] policyholders who opted into the [ELIC] Rehabilitation Plan and those that opted out?

Brief for Appellant Pennsylvania Life and Health Insurance Guaranty Association, STATEMENT OF QUESTIONS INVOLVED, at 3. Upon review of the parties' briefs, we conclude that PLHIGA's first three questions presented are subsumed in the issue of whether Pennsylvania courts must grant full faith and credit to the Implementation Order of the conservation court. Accordingly, we will address those issues together in our discussion of full faith and credit.

■ ¶ 10 In accordance with Article IV, Section 1 of the United States Constitution, the doctrine of full faith and credit "precludes retrial in the Pennsylvania courts of the *validity* of [the judgment of a sister state affecting Pennsylvania residents] 'except for the limited purpose of determining whether the transferor court had jurisdiction to enter the judgment and whether the judgment was obtained without derogating the judgment debtor's due process rights.'" *National Union Fire Ins. v. Nicholas*, 438 Pa.Super. 98, 651 A.2d 1111, 1115–16 (1994) (quoting *Tronagun Corporation v. Mizerock*, 820 F.Supp. 225, 227 (W.D.Pa.1993)). "In order for our courts to recognize [a] judgment as valid and enforceable, the sister state must have had proper jurisdiction over the defendant and afforded him or her due process of law." *Commonwealth Capital Funding, Inc. v. Franklin Square Hospital*, 423 Pa.Super. 149, 620 A.2d 1154, 1156 (1993). "[T]he full and faith and credit clause does not require that we give recognition to a judgment rendered without jurisdiction or without notice and a fair opportunity to be heard; indeed, due process of law mandates that we not do so." *Barnes v. Buck*, 464 Pa. 357, 364, 346 A.2d 778, 782 (1975) (citing *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). *See also Morgan Guaranty Trust Company of*

*New York v. Staats*, 428 Pa.Super. 479, 631 A.2d 631, 634 (1993) (holding that "[w]here a foreign court has jurisdiction over the subject matter and the parties in a dispute, a judgment of that court is entitled to [full faith and credit] unless that judgment has been obtained in derogation of the debtor's due process rights to appear and defend").

¶ 11 Similarly, "[i]f the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Where the plaintiff is a member of a class of claimants whose rights will be adjudicated in foreign litigation "[t]he plaintiff must receive notice plus an opportunity to be heard and participate in the litigation...." *Id.* at 812, 105 S.Ct. 2965.

The notice must be the best practicable, "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." The notice should describe the action and the plaintiffs' rights in it. Additionally, ... due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court. Finally, the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members.

*Id.* (citations omitted). Under this standard, the measure of class member notice must necessarily focus on what is practicable under the circumstances. *Prince George Center, Inc. v. U.S. Gypsum Company*, 704 A.2d 141, 149 (Pa.Super.1997).

¶ 12 In this case, PLHIGA contends that the conservation court provided the plaintiffs ample due process in the form of a written notice sent by the California conservator to each ELIC policyholder. Brief for Appellant at 30; Reply Brief of Appellant [PLHIGA], at 9–10.

PLHIGA argues that the notice was constitutionally sufficient because it apprised the class of the terms of the rehabilitation and each member's option to decline participation in the plan, as well as his or her right to attend an upcoming hearing and raise objections. *Id.* at 31.

¶ 13 Upon close scrutiny, we find the notice insufficient because it fails to provide an accurate discussion of projected benefits of the plan and the policyholders' rights of recovery should they decline to participate. In point of fact, the notice substantially misinformed Pennsylvania policyholders of the value of their rights after liquidation if they opted out of the plan, and exaggerated the value of benefits they would receive if they opted into the plan.

¶ 14 The conservation court adjudged that implementation "[would] not affect the rights of any contract holder who opts out vis-à-vis his or her respective state insurance guaranty association." Implementation Order, 8/13/93, ¶ 6, R.R. at 0615a. In Pennsylvania, those rights include guarantee, assumption or reinsurance by PLHIGA of the full value of individual policies. 40 P.S. § 1807(c)(1), (j). The notice warned, however, that the statutory rights of policyholders who opted out would be substantially compromised. The notice stated, *inter alia:*

The Participating Guaranty Associations generally have stated they will reject claims filed by Contract Holders who opt out.

\* \* \* \*

[If you opt out,] [y]ou will be deemed to have released any and all claims against ELIC, the Enhancement Trusts, the Commissioner, Aurora, ... and certain related parties and entities. Your only remaining rights will be to have the value of your opt-out rights determined in certain pending appeals, and to receive the First Opt–Out Payment and the subsequent payments provided by the Plan.

"Election Package" Information Booklet, December 29, 1993, R.R. at 0527a–28a. Though the notice referenced "pending appeals," it is undisputed that the appeals then pending were unrelated to state guaranty association benefits. In addition, the notice included a comparison chart describing state guaranty association benefits as a source of compensation available *only to ELIC policyholders who opted into the plan.* The chart showed policyholders who opted out with *no access* to such benefits. *Id.* at 0524a. This information suggested that only those who opted into the plan could recoup the full value of their ELIC policies and that those who opted out would be unable to do so. Such a suggestion effectively characterized the rights of those who opted into the plan as more valuable than those who opted out and so established the choice to opt in as the only logical and desirable choice.

¶ 15 Moreover, the notice guaranteed the liquidation value of ELIC policies to those who opted out of the plan at only "56 cents for each dollar of your claim value" subject to a *possible* enhancement of 28 cents at an indefinite date. *Id.* at 0525a. By contrast, the same notice characterized payment offered to those who opted into the plan at 100%. The following discussion, though factually incorrect, provided substantial incentive for policyholders to opt into the plan:

> If the total *ELIC Account Value* or present value of future annuity benefits of all your ELIC contracts covered by a Participating Guaranty Association is less than the statutory coverage limit of the Participating Guaranty Association, your values will be enhanced by the "GA Enhancement Amount" to 100%. You will also receive interest from April 11, 1991 to September 3, 1993.
>
> If your total account value or present value of future annuity benefits exceeds the statutory coverage limit (usually $100,000), the first $100,000 per insured/Annuitant (or other statutory limit) will be enhanced to 100%. . . .

*Id.* at 0541a. Thus, the notice appeared to promise no loss in value to Pennsylvania policyholders who opted into the rehabilitation plan. PLHIGA's actuaries conclude, however, that recovery for holders of even small contracts would not reach 100% for any of the policies held by members of the class. Loss Analysis Report, Doll and Robbins, 8/28/97, R.R. at 0440a.

■ ¶ 16 We find these inaccuracies substantial and directly material to the choice offered to ELIC's Pennsylvania policyholders. Indeed, the notice's portrayal, for policyholders who would choose to opt out, of a significant financial loss not subject to a remedy at law prompts us to doubt that any policyholder, relying solely on the conservator's notice, could make the kind of considered decision fundamental to due process. Consequently, we agree with the plaintiff's conclusion that the notice provided the class plaintiffs with a Hobson's choice unsubstantiated by applicable law. Because the notice provided materially false information, we cannot conclude that it was reasonably calculated under any circumstances to apprise ELIC policyholders in Pennsylvania of their respective rights in ELIC's insolvency. *See Phillips, supra* at 812, 105 S.Ct. 2965. Consequently, we are compelled to conclude that the conservation action did not provide sufficient due process to Pennsylvania policyholders to warrant extension of full faith and credit to the order of the conservation court. Accordingly, we find no error in the trial court's ruling declining to find Plaintiff's statutory claims released under the terms of the Implementation Order.

■ ¶ 17 PLHIGA asserts next that the trial court erred in granting the Plaintiff's motion for summary judgment because participation in the rehabilitation plan satisfied PLHIGA's statutory obligations to Pennsylvania policyholders. Brief for Appellant at 43. PLHIGA argues that its participation in the rehabilitation plan satisfied the statutory mandate of the Life and Health Insurance Guaranty Association Act, 40 P.S. §§ 1801–1824 (repealed 1992), and was approved by the Insurance Commissioner of Pennsylvania.

*Id.* at 43–47. The trial court concluded, as a matter of law, that PLHIGA's participation in the rehabilitation plan did not satisfy its statutory obligations. Trial Court Opinion, 6/12/98, at 9.

¶ 18 In considering a trial court's order granting summary judgment our scope of review is plenary. *Merriweather v. Philadelphia Newspapers, Inc.*, 453 Pa.Super. 464, 684 A.2d 137, 140 (1996). However, we will reverse the judgment entered only if we find that the trial court committed an abuse of discretion. In this context, abuse of discretion occurs:

> when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Tukovits v. Prudential Insurance Company of America*, 448 Pa.Super. 540, 672 A.2d 786, 789 (1996).

¶ 19 Consequently, we consider whether the trial court misapplied the law governing PLHIGA's duty to ELIC's policyholders in Pennsylvania. PLHIGA's powers and obligations in the insolvency of a foreign insurer are described, in pertinent part, at section 1807(c) and (j) of the Act. Section 1807(c) provides as follows:

§ 1807. **Powers and duties of the association**

\* \* \* \*

(c) Whenever a foreign or alien insurer is an insolvent insurer, the association shall, subject to the written approval of the commissioner:

(1) guarantee, assume, or reinsure, or cause to be guaranteed, assumed, or reinsured the covered policies of residents;

(2) assure payment of the contractual obligations of the insolvent insurer to residents; or

(3) provide such moneys, pledges, notes, guarantees, or other means

as are reasonably necessary to discharge such duties.

40 P.S. § 1807(c). In support of its contention that participation in the ELIC rehabilitation fulfilled its statutory obligations, PLHIGA seizes upon the language of subsection (3), asserting that the plan constituted a "means ... reasonably necessary" to discharge its duties. Brief for Appellant at 43–44. PLHIGA argues further that the Act allows it to "enter into such contracts as are necessary or proper to carry out the provisions and purposes of this act," and "negotiate and contract with any liquidator, rehabilitator, conservator or ancillary receiver to carry out the powers and duties of the association." *Id.* (quoting 40 P.S. § 1807(k)(1), (5)).

▆ ¶ 20 After careful consideration of the Act, we conclude that both of PLHIGA's arguments ignore the Act's limitations on PLHIGA's ability to dispose of contractual obligations specified by the policies issued by the insolvent insurer. Though the Act vests PLHIGA with a level of discretion to fulfill its duties, that discretion is limited by the nature of duties the Association is required to fulfill. PLHIGA possesses the authority to take those means reasonably necessary to "guarantee, assume, or reinsure, or cause to be guaranteed, assumed, or reinsured the covered policies of residents" or, "insure payment of the contractual obligations of the insolvent insurer to residents." 40 P.S. § 1807(c)(1), (2). Nowhere does the Act provide PLHIGA unilateral discretion to compromise the value of an insolvent insurer's obligations.

¶ 21 In point of fact, Section 1807(j) of the Act requires that PLHIGA assume liability for the total value of the insolvent insurer's policy obligations, *without reduction,* so long as the aggregate value of policies on a covered life does not exceed $100,000, or $300,000 for all benefits. 40 P.S. § 1807(j). Section 1807(j) provides in pertinent part:

> The contractual obligations of the insolvent insurer for which the association

becomes or may become liable shall be in excess of $100 and *shall be as great as* but no greater than the contractual obligations of the insolvent insurer would have been in the absence of an insolvency unless such obligations are reduced as permitted by subsection (d)....

40 P.S. § 1807(j) (emphasis added). Subsection (d), which provides the only mechanism under the Act for the reduction of PLHIGA's obligations, allows application of policy or contract liens only upon specific approval by the court, 40 P.S. § 1807(d)(2), and a finding:

> that the amounts which can be assessed under this act are less than the amounts needed to assure full and prompt performance of the insolvent insurer's contractual obligations, or that the economic or financial conditions as they affect member insurers are sufficiently adverse to render the imposition of policy or contract liens, to be in the public interest.

40 P.S. § 1807(d)(1). In this case, PLHIGA raises no such finding or court approval, nor did PLHIGA apprise the trial court of any pending petition to fulfill these statutory requisites. We conclude accordingly that, under the facts of this case, any attempt made by PLHIGA to compensate ELIC policyholders at a lower level than ELIC was required to provide under the terms of its contracts does not satisfy PLHIGA's obligation under the Act. Consequently, PLHIGA's participation in the California rehabilitation does not discharge it obligations to ELIC's Pennsylvania policyholders.

¶ 22 Additionally, we find no merit in PLHIGA's contention that the approval of the Insurance Commissioner somehow confirmed its compliance with the provisions of the Act. Brief for Appellant, *supra* at 46. Initially, we find its unqualified assertion of "approval" insupportable. The record reveals that the Commissioner gave only limited approval to PLHIGA's participation in the rehabilitation, reserving jurisdiction in the courts of Pennsylvania to apply Pennsylvania law. Letter of Ronald E. Chronister, Acting Commissioner of Insurance to David Warner, Executive Director, PLHIGA, dated 5/4/92, ¶¶ 1, 4; Letter of Cynthia M. Maleski, Commissioner of Insurance to David Warner, Executive Director, PLHIGA, dated 6/8/93, ¶ 1. Indeed, Commissioner Chronister's letter conditioned PLHIGA's participation in the rehabilitation plan on the primacy of Pennsylvania law. *Id.* at ¶ 4 ("As to the obligations and duties of PLHIGA, it is understood that Pennsylvania law supersedes any provision of the Enhancement Agreement which is inconsistent with Pennsylvania law.").

¶ 23 Moreover, we note that even if the Commissioner offered unconditional approval, PLHIGA's participation in the plan would not discharge its duties under the Act. Though the Act vests discretion in the Commissioner to approve PLHIGA's participation in a rehabilitation plan, it does not empower the Commissioner to compromise the value of an insolvent insurer's policies. That power is reserved to the court pursuant to 40 P.S. § 1807(j) and (d), as discussed, *infra*.

¶ 24 Consequently, we find no error in the trial court's order granting Plaintiff's motion for summary judgment.

¶ 25 Finally, PLHIGA contends that the trial court erred by including as class plaintiffs ELIC policyholders who opted out of the rehabilitation plan. Brief for Appellant, *supra* at 47. Our scope of review of a trial court's order granting certification is limited and we will not reverse the order "unless the court neglected to consider the requirements of the rules or abused its discretion in applying them." *DiLucido v. Terminix International, Inc.*, 450 Pa.Super. 393, 676 A.2d 1237, 1240 (1996) (citing *D'Amelio v. Blue Cross of Lehigh Valley*, 347 Pa.Super. 441, 500 A.2d 1137, 1141 (1985)). PLHIGA argues that because those who opted out retained their statutory rights, they do not share common questions of law and fact with those who participated in the plan. PLHIGA grounds this contention on the putative release of statutory rights by those who

opted into the plan. Because we conclude, however, that no release was effected due to the lack of due process protection in the form of adequate notice, we find no distinction in the respective legal postures of the plaintiffs. Regardless of whether they opted in or out of the rehabilitation plan, all ELIC policyholders included in the certified class commanded the same statutory obligations from PLHIGA. 40 P.S. § 1807(j). Accordingly, when deprived of those rights, all shared questions of law and fact in common. Consequently, we cannot conclude that the trial court abused its discretion in certifying all ELIC policyholders residing in Pennsylvania as class plaintiffs without regard to whether they opted into or out of the California rehabilitation.

¶ 26 For all of the foregoing reasons, we affirm the trial court's orders of April 12, 1995, certifying the class of plaintiffs; February 10, 1995, denying PLHIGA's motion for summary judgment; and June 12, 1998, granting Plaintiff's motion for summary judgment.

¶ 27 Orders **AFFIRMED.**