**SOUTHERN MEDICAL SUPPLY COMPANY, Appellee**

v.

**Paul F. MYERS, Alpha Technology, Inc. and Micro Design & Development, Inc., Appellants.**

Superior Court of Pennsylvania.

Argued June 26, 2002.

Filed Aug. 2, 2002.

---

Scott L. Feldman, Doylestown, for appellants.

Jane E. Leopold-Leventhal, Doylestown, for appellee.

Before: LALLY–GREEN, OLSZEWSKI and POPOVICH, JJ.

POPOVICH, J.

¶ 1 Appellants Paul F. Myers, Alpha Technology, Inc., and Micro Design and Development, Inc., appeal the order entered December 18, 2001, in the Court of Common Pleas of Bucks County, denying their Petition to Open and/or Strike a Foreign Judgment. Upon review, we affirm the order.

¶ 2 The relevant facts and procedural history are as follows: Appellant Micro Design & Development, Inc. (Micro Design), is a company incorporated in Pennsylvania and engaged in the business of manufacturing "wander-control security systems" for use in hospitals and nursing homes. Appellant Alpha Technology, Inc.

(Alpha), also incorporated in Pennsylvania, was engaged in the business of researching, developing and enhancing the technology used by Micro Design. Appellant Paul Myers (Myers) was the CEO for each company. Appellee Southern Medical Supply Company (Southern Medical), is a Georgia Corporation which sells and services products for all manufacturers of any type of medical equipment and products.

¶ 3 Southern Medical, Micro Design and Alpha entered into a contract in 1991 for Southern Medical to sell and market the wander-control security system produced by Micro Design and Alpha. From 1992 through 1997, Southern Medical sold approximately 40 of the systems to Georgia nursing homes and hospitals.

¶ 4 A dispute arose between the parties. Southern Medical claimed that Appellants (Micro Design, Alpha and Myers) owed it more than $700,000.00 for commissions due on sales of the wander-control system, lost profits and pre-paid goods that Appellants failed to ship. On June 15, 1998, Southern Medical instituted an action against Appellants in Lamar County, Georgia, seeking damages of more than $700,000.00. The Complaint alleged that Appellants had conducted business in the State of Georgia. Service of the Complaint was effected by personal service in Quakertown, Pennsylvania, on June 24, 1998. Appellants retained Steven H. Ballard, Esq., and Jerry Patrick, Esq., two Georgia attorneys, to act as local counsel. Through counsel, Appellants entered a Notice of Special Appearance on July 9, 1998, contesting the jurisdiction of the Georgia court as provided for in the Official Code of Georgia § 9–11–12.

¶ 5 Thereafter, the parties agreed to an accounting and audit on certain amounts and figures claimed by the parties. The

Georgia court accepted this agreement on July 22, 1998. Following this agreement, Attorney Patrick withdrew as counsel on August 27, 1998. On September 10, 1998, approximately three months after the filing of the initial Complaint, Southern Medical's counsel forwarded a "Certificate of Default Judgment" to Appellants' counsel. Thereafter, on September 15, 1998, Appellants filed an Answer to the Complaint and simultaneously filed a Motion to Open the Default Judgment and a supporting brief. On November 2, 1998, the Georgia court issued its Order denying Appellants' Motion to Open. The Georgia court denied Appellants' Motion to Open for failure to pay costs and for filing an untimely Answer to the Complaint. The Georgia court approved and entered Southern Medical's Certificate of Default Judgment. Nevertheless, the parties still continued to correspond with one another in efforts to settle the dispute through Alternative Dispute Resolution methods while the case was proceeding to trial on the issue of damages.

¶ 6 On January 7, 1999, Attorney Ballard submitted an "Alternative Dispute Resolution Office–Initiation Form" that indicated Myers, James Lyle (Southern Medical's president) and the attorneys for each party would attend. The parties participated in mediation through the Georgia ADR program. Despite repeated attempts to settle the dispute, the parties were unable to do so, and the case proceeded to trial on the issue of damages.

¶ 7 A bench trial to determine damages was set for June 8, 1999. One day prior to trial, Appellants' counsel filed a Motion to Withdraw from Representation. The Georgia court did not rule on this Motion because Appellants' counsel failed to comply with Georgia's procedural requirement that counsel provide 10 days notice in order to withdraw. The trial to determine damages was then held on June 8, 1999, before the Honorable E. Byron Smith in the Superior Court of Lamar County, Georgia. Counsel for Appellants was present during the trial, but he did not present a defense. At the conclusion of the trial, the court entered judgment in favor of Southern Medical in the amount of $739,004.32. Thereafter, on June 23, 1999, Alex Crumbley, Esq., Southern Medical's attorney, recorded the judgment pursuant to Georgia law by filing a "Final Judgment." After filing the Final Judgment, the clerk of courts of the Georgia court forwarded the Final Judgment to Attorney Ballard.

¶ 8 On January 11, 2001, Southern Medical commenced the present action in the Court of Common Pleas of Bucks County by filing a Praecipe to File and Index a Foreign Judgment pursuant to the Uniform Enforcement of Foreign Judgments Act.[1] The trial court issued a Rule To Show Cause why the judgment should not be recorded against the Appellants. The Rule was made returnable on May 7, 2001. Appellants responded by filing a Petition to Open and/or Strike the Foreign Judgment on February 6, 2001. Southern Medical filed its Reply to Appellants' Petition on May 4, 2001. The trial court denied Appellants' petition on December 18, 2001. Appellants filed a timely notice of appeal to this Court on December 28, 2001. The trial court ordered Appellants to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P.1925(b). Appellants filed their Pa.R.A.P.1925(b) Statement on January 17, 2002. The trial

1. 42 Pa.C.S.A. § 4306.

court authored its Pa.R.A.P.1925(a) Opinion on February 15, 2002.

¶ 9 Appellants present the following issues for our review:

(1) Whether the Superior Court of Lamar County, Georgia lacked personal jurisdiction over [Myers], who acted at all times as the employee, agent and representative of corporate entities.

(2) Whether the Superior Court of Lamar County, Georgia lacked personal jurisdiction over the [corporate Appellants].

(3) Whether [Appellants] were denied due process by the Superior Court of Lamar County, Georgia's entry of judgment by default.

(4) Whether [Appellants] were denied due process by both the Georgia Court and [Southern Medical's] failure to serve [Appellants] a copy of the Final Judgment upon [Southern Medical's] filing with the Georgia Court, thus denying [Appellants] the opportunity to file a timely appeal [in the Georgia court system].

Appellants' brief at 5.

■■■ ¶ 10 We consider Appellants' first two claims together because they present essentially the same issue. Appellants argue that the Georgia court did not possess personal jurisdiction over them and, consequently, was unable to render a valid judgment against Appellants in this case. Therefore, Appellants' argue the Court of Common Pleas of Bucks County erred when it denied Appellants' Petition to Open and/or Strike the judgment of the Georgia court. We enunciated our standard of review for appeals from the denial of a Petition to Open and/or Strike a Foreign Judgment in *Reco Equip., Inc. v. John T. Subrick Contr., Inc.,* 780 A.2d 684, 686–687 (Pa.Super.2001), as follows:

Our standard of review from the denial of a petition to strike a judgment is limited to whether the trial court manifestly abused its discretion or committed an error of law. *Crum v. F.L. Shaffer Co.,* 693 A.2d 984 (Pa.Super.1997). The full faith and credit clause of the United States Constitution requires state courts to recognize and enforce the judgments of sister states. U.S. Const. Art. 4, § 1. "In order for our courts to recognize [a] judgment as valid and enforceable, the sister state must have had proper jurisdiction over the defendant and afforded him or her due process of law." *Gersenson v. PA. Life and Health Ins. Guar. Ass'n,* [1999 PA Super 69] 729 A.2d 1191, 1195 (Pa.Super.1999), *appeal denied,* 562 Pa. 671, 753 A.2d 818 (2000) (quoting *Commonwealth Capital Funding, Inc. v. Franklin Square Hospital,* 423 Pa.Super. 149, 620 A.2d 1154, 1156 (Pa.Super.1993)).

■■■ ¶ 11 We begin our analysis with the observation that a court must have personal jurisdiction over a party to enter judgment against it. *Bancorp Group, Inc. v. Pirgos, Inc.,* 744 A.2d 791, 792 (Pa.Super.2000). The Full Faith and Credit Clause of the United States Constitution does not require recognition for a judgment of a sister state rendered without jurisdiction. U.S. Const. Art. IV, Sec. 1; *Gersenson,* 729 A.2d at 1195. At issue here is whether Appellants' business transactions with Southern Medical in Georgia were sufficient "minimum contacts" that would confer upon the Georgia courts personal jurisdiction over Appellants under the Georgia Long–Arm Statute, Ga.Code Ann. § 9–10–90, *et. seq.* Section 9–10–

91(1) of the Georgia Code states, in pertinent part:

> A Court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent he:
>
> (1) transacts any business within this state.

■ ¶ 12 Relevant Georgia caselaw indicates that Georgia's Long–Arm Statute is to be exercised over nonresidents to the maximum extent permitted by procedural due process. *Clarkson Power Flow, Inc. v. Thompson,* 244 Ga. 300, 260 S.E.2d 9 (1979). Further, the Georgia Court of Appeals has held that to exercise jurisdiction over a nonresident, the following must be demonstrated:

> (1) The nonresident must purposefully avail himself of the privilege of doing some act or consummating some transaction with or in the forum; (2) the plaintiff must have a legal cause of action against the nonresident which arises out of or results from the activity or activities of the defendant within the forum; and (3) a "minimum contact" between the nonresident and the forum must exist, and the assumption of jurisdiction must be consonant with due process notions of fair play and substantial justice, that is, it must be reasonable.

*Dana Augustine, Inc. v. Parkman,* 226 Ga.App. 881, 487 S.E.2d 697, 698 (1997).

¶ 13 Herein, Appellants argue that their course of dealing with Southern Medical did not create sufficient "minimum contacts" that would confer the state of Geor-

gia personal jurisdiction over them. We disagree. A thorough review of the record indicates that the course of dealing between both parties was sufficient to confer personal jurisdiction over Appellants to the Georgia courts under the Georgia Long–Arm Statute.

¶ 14 The record indicates that both Myers and the corporate Appellants availed themselves purposely of the privilege of doing business in Georgia. There is no dispute that Myers traveled to Georgia in 1993 and 1994 to train employees of Southern Medical and promote sales of the wander-control system. Affidavit of James Lyle, 11/27/2001, at 2. Appellants' employees or Myers would often field trouble-shooting questions from Georgia nursing homes and hospitals, and Appellants would assist the Georgia health care centers in correcting problems with the wander-control systems. *Id.* at 4. Southern Medical forwarded Appellants' direct mail advertising to prospective customers of the wander-control system in Georgia. *Id.* at 4. Throughout the parties' business relationship, the record indicates constant communication between them *via* facsimile, telephone or written correspondence. *Id.* at 3. The record also indicates that the State of Georgia was Southern Medical's largest customer for Appellants' wander-control system from 1992 to 1996. *Id.* at 3. Finally, the record indicates that Appellants sold products directly to the end-user customer when financial disputes arose between them and Southern Medical despite the fact that Southern Medical had already paid for the products in question. *Id.* at 3. Thus, it is clear that Appellants availed themselves of the privilege of doing business in Georgia. These facts also indicate that Appellants' business relationship with Southern Medical was of a close and ongoing nature sufficient to create "minimum

contacts" with the State of Georgia that would allow Appellants to be haled into Georgia's courts from a cause of action arising from Appellants' business relationship with Southern Medical. *See Habersham Metal Products Co. v. Huntsville Fastener & Supply, Inc.*, 216 Ga.App. 646, 455 S.E.2d 356, 357 (1995) (holding that where the out-of-state appellant corresponds continuously with appellee after contract is made, sends catalogs and products and maintains general course of dealing, personal jurisdiction is proper under the Georgia Long–Arm Statute). Myers and the corporate Appellants' consistent and purposeful dealings with Southern Medical bestowed substantial benefits to them and, consequently, reasonableness, fair play or substantial justice would not be offended by hailing them into a Georgia court. *White House v. Winkler*, 202 Ga. App. 603, 415 S.E.2d 185 (1992). Accordingly, we find no abuse of discretion on the part of the trial court in denying Appellants' Petition.

■ ¶ 15 We consider Appellants' third and fourth issues together because they present essentially one issue for our review: Whether the Pennsylvania trial court abused its discretion when it determined that Appellants were properly denied an on-the-merits adjudication of this matter in the Georgia court system. Appellants first argue that they were denied due process as a result of the Georgia court entering default judgment against them. The record indicates that Appellants' Motion to Open Default Judgment, filed in the Georgia court on September 15, 1998, was denied by the Georgia court on November 5, 1998, due to Appellants' failure to pay all appropriate costs. *See* Defendants' Memorandum in Support of its Petition to Open/Strike Default Judgment, at Exhibits "H" and "I". The record also indicates a copy of a certified check, made payable to the Clerk of the Superior Court of Lamar County, Georgia, in the amount of $90.00, dated October 30, 1998. Appellants do not argue that this check was the check paid to the Georgia court for the costs of their Motion to Open Default Judgment. *Id.* at Exhibit "L". Rather, they state that, "[a]mong the documents received from the Clerk of Lamar County was a copy of Attorney Ballard's check in the amount of $90.00, dated October 30, 1998, a true and correct copy of which is attached to [Appellants'] Memorandum of law as Exhibit 'L'." Appellants present no affidavits or evidence that the $90.00 check, dated over a month after the Motion to Open had been filed, was used to pay the costs of the Motion. Appellants also fail to present evidence of the actual costs of filing such Motions in the Georgia courts.

¶ 16 We note that courts in all jurisdictions possess an inherent power to enforce their procedural rules and penalize parties who do not abide by them. Here, Appellants present no meaningful evidence to this Court that they abided by the rules of the Georgia courts with respect to filing fees. Accordingly, we do not find that Appellants were denied due process when the Georgia court penalized them for their failure to pay the appropriate filing fee on their Motion to Open Default Judgment.

■ ¶ 17 Appellants next assert that they were denied due process because they never received notice of the Final Judgment of June 23, 1999, until December, 2000, and, consequently, were unable to appeal the judgment in the Georgia courts. This argument is without merit. The deposition of Alex Crumbley, Esq., Southern Medical's Georgia attorney, indicates that

when a Final Judgment is entered in Georgia, the Clerk of Courts of the County automatically sends a copy of the judgment to all counsel-of-record. *See* Crumbley Deposition, 6/4/2001, at 16. At that time, Attorney Ballard presumably remained counsel-of-record for Appellants and would have received a copy of the Final Judgment. Appellants present an affidavit from Attorney Steven Ballard stating that he did not receive the Final Judgment to rebut the presumption that he received the Final Judgment. Myers also presents an affidavit stating that he did not receive the Final Judgment until December, 2000. *See Roland v. Shelton*, 106 Ga.App. 581, 127 S.E.2d 497, 500 (1962) (Notice of Judgment in Georgia will be presumed valid when mailed, unless presumption is rebutted by uncontradicted evidence that defendant did not receive notice). However, Southern Medical contradicts Appellants' affidavits with evidence of their correspondence with Appellants and with Myers' own deposition. Myers' correspondence with Southern Medical indicates that Appellants were aware of the Final Judgment as early as September 7, 1999. On that date, Myers sent James Lyle an E-mail that stated the following:

> I understand that you are trying to sell my inventory to Alpha Watch. I made

sure that Margaret was given a copy of the **transcript from the trial**. To refresh your memory, the judge would only include the value of the inventory into *your judgment* if you agreed to send it back...

\* \* \*

I'm disappointed that you have not started proceedings in PA yet, I have gone through a lot of effort to prepare for your arrival. I am sure that you are aware that both Alpha Technology and Micro Design no longer have any assets or bank accounts to go after. In fact[,] Alpha Technology has filed its final year end tax returns. Micro Design will [be] doing the same at the end of the year. Of coarse (sic) I have never held any assets except for the companies, all of my personal bank accounts have been closed.

Plaintiff's Memorandum of Law in Opposition to Defendants' Petition to Open and/or Strike Foreign Judgment, 11/30/2001, at Exhibit 22 (emphasis added).

¶ 18 It is clear from Myers' discussion of the trial transcript of June 8, 1999, that he was aware that a Judgment against him existed. Moreover, in a deposition held on December 13, 2000, Myers was asked:

MS. LEOPOLD–LEVENTHAL: Yes, was your decision to close the personal bank accounts in preparation related to [. . .] Southern Medical's possible attempt to transfer the judgment to Pennsylvania?

APPELLANT: I guess that's a fair assessment.

Myers Deposition, 12/13/2000, at 75.

¶ 19 Therefore, it is clear from Myers' correspondence with Southern Medical that he was fully aware of the judgment against both himself and his companies. At its core, procedural due process requires, "adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Krupinski v. Vocational Technical School*, 544 Pa. 58, 61, 674 A.2d 683, 685 (1996). Appellants are unable to rebut the presumption that the Georgia court sent no-

tice of the judgment against them because they reference the judgment in correspondence that took place prior to December, 2000, and because Myers' deposition indicates that he hid assets in anticipation of the transfer of the judgment from Georgia to Pennsylvania. Appellants are also unable to claim that they were not afforded an opportunity to be heard or defend themselves because they were represented at the trial on damages. Accordingly, we are unable to find that the Court of Common Pleas of Bucks County erred when it found that the Georgia court did not violate Appellants' due process rights.

¶ 20 As we have disposed of each of Appellants' claims, we affirm the order denying Appellants' Petition to Open and/or Strike.

¶ 21 Order affirmed.