J-S10002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.L. & S.Q.L., MINORS<br><br>APPEAL OF: S.P.B., JR., FATHER | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 2784 EDA 2016 |

Appeal from the Decree June 27, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):
CP-51-AP-0000532-2016
CP-51-AP-0000533-2016

BEFORE: BENDER, P.J.E., DUBOW, J., and SOLANO, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MARCH 13, 2017**

S.P.B., Jr., ("Father") appeals from the June 27, 2016 decree that granted the petition filed by the Philadelphia Department of Human Services ("DHS") to involuntarily terminate his parental rights to A.L. (born in October 2007) ("Child 1") and S.Q.L. (born in August 2009) ("Child 2") (collectively "Children").[1]  We affirm.

In its opinion, the trial court set forth the factual and procedural history of this case, as follows:

> The family in this case has been known to DHS since 2010. Between 2010 and 2014, DHS received four General Protective Services ("GPS") reports alleging problems in the home.  All four reports were substantiated, and DHS offered services.  On February 6, 2014, DHS received another GPS report that the utilities in the home of M.L., ("Mother") mother of the Children, were turned off.  DHS visited the home and found it was filled

---

[1] The parental rights of M.L. ("Mother") were also terminated; however, she is not a party to this appeal.

with trash, smelled of marijuana and had no heat. The Children were truant. By family arrangement, DHS implemented a Safety Plan and the Children moved into the home of F.L., ("Cousin") their maternal cousin. On March 25, 2014, Mother met with DHS and the Community Umbrella Agency ("CUA") and stated she wanted the Children to return to her care. DHS obtained an Order of Protective Custody ("OPC") and formally placed the Children with Cousin. The following day Cousin stated she could not care for the Children, so DHS placed them in other foster homes. Father, who was Mother's paramour at the time, contacted DHS and verbally[] claimed paternity of Child 1, Child 2, and M.L., ("Child 3") another of Mother's children. Following an adjudicatory hearing on April 9, 2014, the court adjudicated the Children dependent and fully committed them to DHS custody. The court also ordered paternity tests for Father. Father never attended any permanency hearings held between 2014 and 2016. He did not complete a paternity test. On June 10, 2016[,] DHS filed petitions to terminate Father's parental rights to the Children. The Children's birth certificates had to be ordered by CUA, upon which it was discovered that Father, then Mother's paramour, was listed as the father.

The termination and goal change trial was held on June 27, 2016. The trial covered the Children, Child 3 and two other siblings, and involved a number of fathers and putative fathers of those siblings. Father was permitted to be heard by telephone, because he was incarcerated in a Federal penitentiary. The court began the case at exactly 1:30 P.M., at Father's request. Athena Dooley[, Esq.], Father's court-appointed counsel, was present. When Father appeared by telephone he stated that he did not know what the trial was about. He stated that he would not participate if Dooley was [*sic*] there. The trial court colloquied Father, explaining to him that he had the right to participate or listen silently to the case. Father then hung up and did not participate any further. The court found that DHS had made reasonable efforts to notify Father, since he was allowed to be heard by telephone at the hearing in light of his incarceration. Dooley, as Father's counsel, stipulated to DHS's offered exhibits. The CUA social worker testified that Father's objectives under the Single Case Plan ("SCP") were to make himself known to CUA and to take a paternity test. Father never took a paternity test, and is only the putative father of the Children. Mother denies he is their father. The CUA social worker testified that Father had no

positive relationship with the Children, and there would be no irreparable harm if his parental rights were terminated. Father was non-compliant with his SCP objectives. Child 1 is placed with a maternal cousin in a pre-adoptive home. Child 2 is placed at Devereux Hospital because he ran from a prior foster home. Father is a registered sex offender, and had intended to adopt the Children and their siblings when he was released from prison. The CUA case manager testified that Father had claimed paternity of the Children in 2014. Father made himself known to CUA, and CUA sent letters to Father in prison by certified mail. These letters were not returned. These letters informed Father that he had been court-ordered to take a paternity test. Father never took a paternity test. The trial court terminated Father's parental rights to the Children under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b), and changed their permanency goal to adoption. The trial court held its decision on termination in abeyance regarding Child 3, since Child 3 did not wish to be adopted.[1] [Attorney] Dooley was vacated as counsel for Father, and Neil Krum, Esq., was appointed.

> [1] The trial court also terminated the parental rights of several other fathers and putative fathers on June 27, 2016. None of these individuals have appealed.

On July 26, 2016, [A]ttorney Krum filed a Notice of Appeal for the Children and Child 3. His Statement of Matters filed on that date read simply, "T.B.D." On August 26, 2016, [A]ttorney Krum filed a statement of matters which actually alleged errors.

Trial Court Opinion (TCO), 9/21/16, at 1-3 (citations to the record and notes of testimony omitted).[2]

Initially, the trial court held that Father waived all issues he wished to raise because Attorney Krum failed to file a timely statement of errors

---

[2] By order of this Court, dated October 14, 2016, the portion of Father's appeal relating to Child 3 was removed as part of this appeal because the trial court had not terminated Father's rights to Child 3 in the June 27, 2016 order presently on appeal.

complained of on appeal in this children's fast track appeal as required by Pa.R.A.P. 1925(a)(2)(i) ("The concise statement of errors complained of on appeal shall be filed and served with the notice of appeal…."). Specifically, the court recognized that a notice of appeal must be filed within 30 days of the entry of a final order, which in this case occurred on June 27, 2016, and that because the first statement (solely stating T.B.D.), filed on July 26, 2016, did not contain any errors that Father intended to challenge, no grounds for appeal were preserved. Furthermore, the court determined that the August 26, 2016 statement that contained claims of error was filed well beyond the 30-day time limit and, therefore, should be dismissed. **See also** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Despite its assertion that all issues had been waived, the court proceeded to address "the substance of Father's untimely and procedurally unsound appeal." TCO at 4.

Specifically, the court discussed the basis for its decision to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b), setting forth facts gleaned from the documentation and testimony presented at the June 27, 2016 hearing. The court also addressed Father's claim that he was denied due process of law. Thus, the court suggested that its termination of Father's parental rights was proper and should be affirmed by this Court.

In his brief to this Court, Father raises the following issues for our review:

> 1.  Did the court below err in ruling that Appellant/Father, S.B., had been properly served, as required by statutes and court rules, and in denying Due Process to Appellant S.B., Father, as guaranteed by the Constitutions of the United States and of the Commonwealth of Pennsylvania?
>
> 2.  Did the court below err in finding that [DHS] had met its burden in proving grounds under 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5) and (8), by "clear and convincing evidence"?
>
> [3]. Did the court below err in finding that DHS had met its burden to prove that termination would be in the Children's best interests, under § 2511(b)?

Father's brief at 4.

Before addressing Father's issues, we must comment on the trial court's determination that Father has waived them all because of a failure to provide a timely Rule 1925(a)(2)(i) statement. To determine whether Father's issues should be considered waived, we rely on the statement found in **In re Adoption of C.J.P.**, 114 A.3d 1046 (Pa. Super. 2009), wherein this Court explained:

> Neither CYS nor Child's guardian *ad litem* has objected or claimed any prejudice as a result of Mother's failure to file a concise statement until ordered to do so by this Court. Thus, we have accepted Mother's statement in reliance on our decision in **In re K.T.E.L.**, 983 A.2d 745, 748 (Pa. Super. 2009) (holding that a mother's failure to comply strictly with Pa.R.A.P. 1925(a)(2)(i) did not warrant waiver of her claims, as there was no prejudice to any party). **Cf. J.M.R. v. J.M.**, 1 A.3d 902, 906-07 (Pa. Super. 2010) (holding that a father had waived his claims on appeal after this Court order him to file a concise statement, and the father's statement was untimely).

*Id.* at 1049 n.4. Thus, contrary to the waiver found by the trial, we conclude that under the circumstances here, Father has not waived all of the issues he has raised in his appeal.

We now turn to Father's first issue in which Father claims he was denied due process because he was not served with notice and was not afforded the opportunity to be heard at the June 27, 2016 goal change/termination hearing. Father begins his discussion by pointing out that the Adoption Act requires ten days' notice to him "by personal service or by registered mail … or by such other means as the court may require." Father's brief at 12 (quoting 23 Pa.C.S. § 2513(b)). Moreover, he claims that there is no evidence presented that he had been served with this notice and that, therefore, the trial court erred by determining that reasonable efforts had been made to serve him. As part of this argument, Father also asserts that he was denied due process because he was denied his request to change counsel and to prepare his case.

In response to these assertions, the trial court stated in its opinion that:

> Father also alleges that he was denied due process of law. Due process requires adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter. *In Re Adoption of J.N.F.*, 887 A.2d 775, 781 (Pa. Super. 2005); see also *S. Med. Supply Co. v. Myers*, 804 A.2d 1252, 1259 (Pa. Super. 2002). The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Father appeared at the goal change termination hearing by telephone. The trial began at a time specified by Father, for his convenience. The court found that Father had notice of the trial. The trial court colloquied Father, and explained the purpose of the trial. The trial court made it clear that he could be present and could either listen silently or testify himself. Father chose to hang up the phone and not participate. Father was afforded a meaningful opportunity to be heard at the most consequential time in the trial. He voluntarily refused after the trial court explained his options and the potential consequences. Father had court-appointed counsel since April 2014, the start of the case. Father's counsel was present for the trial and cross-examined DHS's witnesses. Father's counsel also showed that she had diligently read the case materials, since she corrected a misstatement by the CUA social worker. In allowing Father to participate and allowing his counsel to question witnesses and introduce evidence, the trial court did not deny Father his constitutional due process rights.

TCO at 9.

Unfortunately for Father, we are compelled to conclude that this issue has been waived because he failed to object to the court's determination that DHS made reasonable efforts to serve him with notice of the goal change/termination hearing. Claims not raised in the trial court "may not be raised for the first time on appeal." **In re S.C.B.**, 990 A.2d 762, 767 (Pa. Super. 2010).

In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction … one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

- 7 -

*Id.* (quoting *Thompson v. Thompson,* 963 A.2d 474, 475-476 (Pa. Super. 2008)).

Next, we turn to Father's second and third issues in which he claims that the court erred in concluding that DHS had met its burden of proving grounds for termination under sections 2511(a) and (b). We review an order terminating parental rights in accordance with the following standard:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* at 276 (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we

will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

This Court must agree with only one subsection of 2511(a), in addition to section 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Herein, we review the decree pursuant to section 2511(a)(2) and (b), which provide as follows.

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect, or refusal; (2) such incapacity, abuse, neglect, or refusal caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental

rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

In *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court addressed the relevance of incarceration in termination decisions under section 2511(a)(2). The *S.P.* Court held that "incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied." *S.P.*, 47 A.3d at 828.

With respect to section 2511(b), this Court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis

- 11 -

necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

The trial court in discussing section 2511(a)(2), stated:

The Children have been in care since April 9, 2014. Father contacted CUA in 2014 and claimed paternity of the Children. CUA then notified Father by certified mail that the court had ordered him to take a paternity test. Father had requested the paternity test. Father never took a paternity test. The court heard no evidence that Father had ever provided any parental care for the Children. Father has known about the court-ordered paternity test since 2014, but has not complied. Father would not even participate in the termination trial. Father is also still incarcerated at the Allenwood Federal Penitentiary. The Children need permanency, which Father cannot provide. Father has demonstrated that he is unwilling to remedy the causes of his incapacity to parent in order to provide the Children with essential parental care, control or subsistence necessary for their physical and mental well-being.

TCO at 6 (citations to the record omitted).

The thrust of Father's argument, relating to section 2511(a)(2), is that the trial court's conclusions are not "logically drawn from the evidence presented." Father's brief at 25. He also contends that the court did not analyze how the evidence supported the court's conclusion that "Father is unable to remedy the causes of his incapacity" and that that conclusion is "not supported by 'clear and convincing evidence.'" *Id.* Those allegations are the extent of Father's argument, which we conclude is insufficient to convince this Court that the trial court erred in ordering the termination of Father's parental rights. Simply stated, Father was required "to make himself known to CUA and to take a paternity test." TCO at 2. The

- 12 -

testimony revealed that Father was ordered multiple times to take a paternity test, which he did not do, and that outreach was extended to Father and that he never replied. *See* N.T., 6/27/16, at 39. Testimony also revealed that Father's level of compliance was "none" and that no irreparable harm would befall the Children if Father's parental rights were terminated. *Id.* at 40. There is no contrary evidence that would support Father's position countering DHS's evidence.

As for the section 2511(b) analysis, the trial court explained its reasoning by stating that:

> The CUA social worker testified unequivocally that Father and the Children have no positive relationship. There would be no irreparable harm if Father's rights were terminated. When Father appeared by phone and expressed a desire not to participate, the trial court colloquied him, explaining that he might lose his parental rights if he did not participate. Father seemed unconcerned with his parental rights, and hung up the phone. The Children are placed in foster homes which provide them with safety and permanency. Child 2 is placed in a pre-adoptive kinship home. Termination of Father's parental rights will free the Children for adoption, and is in their best interest. The trial court heard no evidence of any bond between Father and the Children. Consequently, the court did not abuse its discretion when it found that it was clearly and convincingly established that there was parental bond, and that termination of Father's parental rights would not destroy an existing beneficial relationship.

TCO at 8-9 (citations to the record omitted). We agree. In particular, we note that the record does not provide information about Father's interaction with the Children, if any, presently or in the past. Moreover, no information relating to an end date for Father's period of incarceration is provided.

- 13 -

Therefore, based on the evidence presented and the relevant case law, we discern no abuse of discretion by the court in concluding that terminating Father's parental rights "would best serve the developmental, physical, and emotional needs and welfare" of the Children. 23 Pa.C.S. § 2511(b).

Accordingly, we affirm the decree terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

Decree affirmed.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/13/2017